IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAC MARITIME, LTD. § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO.: 1:21-cv-00202-RGA |
| vs. § | |
| § | IN ADMIRALTY, Rule 9(h) |
| M/V OCEAN FORCE, IMO 8215613, its § | |
| engines, tackle and apparel, § | |
| § | |
| Defendant *in rem*. § | |

**FIRST AMENDED VERIFIED COMPLAINT WITH
REQUEST FOR ISSUE OF WARRANT OF ARREST**

CAC Maritime, Ltd. ("CAC") hereby amends its complaint, continuing to bring this action pursuant to Supplemental C for Certain Admiralty and Maritime Claims against defendant OCEAN FORCE, IMO 8215613, its engines, tackle and apparel ("Vessel"), *in rem*, pursuant to Supplemental Rule C for Certain Admiralty and Maritime Claims states as follows:

**Jurisdiction and Venue**

1. This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Fed. R. Civ. P. 9(h).

2. Venue is proper in this District because the Vessel is located in this District.

**The Parties**

3. CAC is a vessel charterer located in Panama.

4. The Vessel is an ocean-going roll on-roll off vessel.

**Facts**

5. On or about December 23, 2020 CAC chartered the Vessel from the Vessel's owners, Redbrick Ventures, Inc. c/o Primeshipping International, BVI corporation, office, ofis 301N, ul Very Inber 5, Odessa, 65014, Ukraine ("Owners"), taking possession of the Vessel at or

27776518.1

near Fall River, Massachusetts.  Almost immediately, CAC began to experience problems with the Vessel and cargo.  Owners had represented that the Vessel would have some small amount of Owners' equipment aboard, but instead, it was cargo; instead, there were aboard (and remain aboard) four 40 foot containers, and two twenty foot containers, filled with hazardous cargo.  The Vessel carrying Owners' hazardous cargo was never known or agreed by CAC, prior taking on the Vessel under the charter party, and never agreed by CAC.

6. The hazardous cargo is listed on the Master's cargo stow plan as "IMO 6.1 U.N. 1555," the International Maritime Organization code/designation for Antimony Potassium Tartrate, which on the U.S.  OSHA SDS #: 25167 rev 101 10.7.2015 datasheet is described as follows:   OSHA Classification:   Acute Toxicity - Oral; Acute Toxicity – Inhalation; Hazard Category:  3 - Toxic if swallowed,  4 – Harmful if inhaled;  Inhalation: Harmful if inhaled.  Irritating to the nose and throat and respiratory system. Overexposure may cause coughing, difficulty in breathing and chest pains.  Skin Contact: Contact may cause skin irritation.  Eye Contact: Contact may be irritating to the eyes.  Ingestion: Harmful or fatal if swallowed.  Symptoms include salivation, cough, metallic taste, nausea, vomiting, bloody diarrhea, dizziness, irritability and muscular pain. May cause heart to beat irregularly or to stop.

7. Because Owners had failed to unload the excess – and hazardous - cargo from the Vessel, the Vessel could not fully load cargo at Fall River, causing CAC to lose profits; then proceeded to St. Martin and then to Guadaloupe, but experienced delays in loading.  The Vessel then proceeded to Jacumel, Haiti, where it was supposed to unload cargo, but did not because of problems with the port there.  The Vessel then proceeded from Jacumel to Wilmington, to take on further cargo.

27776518.1

8. On arrival at Wilmington, however, the Vessel could not take on the cargo to be loaded because the Vessel still had failed to discharge or unload cargo at Haiti and also was carrying the six containers left on the Vessel from a prior voyage and prior to the Charter Party with CAC.

9. The Vessel consequently was not fit for its purpose, namely, not being cleared with cargo before the Charter Party, and then failing to load cargo and timely proceeding as required by the Charter Party.

10. CAC's damages are at least the following:

   a. **$55,000**: Revenue shut out for the voyage from Fall River, Massachusetts to St. Marc, St. Marc Haiti for lack of space to fit all cargo available for the voyage, owing to owners' refusal to remove their cargo/items;

   b. **$6,100**: Owners refuse to put vessel off hire, while taking one day for charterers to shift owner's cargo/ items from hold to deck;

   c. **$175,000**: Charterer forced to cancel the second voyage because of owners' refusal to move their cargo/items and lost space needed for cargo to be booked for the voyage;

   d. **$52,840**: Vessel at anchorage St. Marc, Haiti December 31, 2020- January 8, 2021 waiting for next voyage since second consecutive voyage – Fall River to St. Marc, was canceled;

   e. **$222,937.50**: Unpaid demurrage, voyage from St. Martin and Guadalupe to Jacmel, Haiti, sub-charterer refused to pay demurrage claiming cargo left behind for owners' refusal to remove their items/ cargo from the Vessel, and refusing notice of readiness;

      f.      **$120,000**:  Canceled voyage from Wilmington, Delaware to St. Marc, Haiti for booked cargo, due to owners' refusal to remove their items/ cargo from the Vessel;

      g.      **$200,000**:  Cancelation of voyage from Freeport, Bahamas to Veracruz, Colombia, full cargo of scrap crushed cars, to be positioning cargo for Veracruz (new trucks), due to owners' refusal to remove their items/ cargo from the V

      h.      **$150,000**:  Cancelation of voyage from Altamira, Mexico to Cartagena, Colombia, customer/ shipper canceled voyage and booked with others, because of Vessel's inability to make laycan because of problems experienced by the Vessel at Wilmington.

**Total damages, at least $981,877.50** from owners' breach of the charter party, as demanded below.

### Count I – Breach of Maritime Contract

11.    CAC incorporates the above paragraphs as if fully set forth herein.

12.    Owners of the Vessel have breached their maritime contract, namely, the Charter Party, with CAC as set out above.  CAC therefore demands judgment against the Vessel, as set out more fully below.

### Count II – Maritime Lien In Rem Against the Vessel and Proceeds

13.    CAC incorporates the above paragraphs as if fully set forth herein.

14.    CAC as a consequence of the breach of charter party holds maritime liens *in rem* against the Vessel and proceeds.   CAC therefore demands judgment against the Vessel and proceeds, as set out more fully below.

**Prayer for Relief**

WHEREFORE, CAC prays:

A.   That in response to Count I, this Court enter judgment against the Vessel and in favor of CAC for **at least $981,877.50** as demanded above and contractual interest plus further amounts for attorneys' fees of at least $150,000, **total, $1,131,877.50**.

B.   In response to Count II, that this Court order that the *in rem* claims against the Vessel of CAC proceed against the Vessel, *in rem*, and that on judgment CAC's maritime lien claims *in rem* be paid from the proceeds, in the amount of at least that demanded above;   and

C.   That this Court award CAC such other and further relief that this Court deems just and proper.

Dated:  February 24, 2021.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Timothy Jay Houseal*
───────────────────────────────
Timothy Jay Houseal (Del. Bar ID No. 2880)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6682
thouseal@ycst.com

**OF COUNSEL**

J. Stephen Simms                    *Attorneys for CAC Maritime, Ltd.*
Simms Showers LLP
201 International Circle, Ste. 250
Baltimore, Maryland 21030
Telephone:   (410) 783-5795
Facsimile:   (410) 510-1789
jssimms@simmsshowers.com

27776518.1

## **VERIFICATION**

I am a Principal of the law firm Simms Showers LLP, of counsel to CAC.

The facts alleged in the foregoing First Amended, Verified Complaint are true and correct to the best of my knowledge and information based upon the records of CAC made available to me by CAC. Authorized officers of CAC are not readily available in this District to make verifications on CAC's behalf. I am authorized to make this verification on CAC's behalf.

      Pursuant to 28 U.S.C. § 1746(1), I solemnly declare under penalty of perjury that the foregoing is true and correct.

      Executed on February 24, 2021.

      */s/ J. Stephen Simms*
      J. Stephen Simms
      Simms Showers LLP
      201 International Circle
      Baltimore, Maryland 21030
      Tel: 410-783-5795
      Email: jssimms@simmsshowers.com