IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAC Maritime, Ltd., | : | |
| Plaintiff, | : | C. A. No. 1:21-cv-00202-RGA |
| vs. | : | IN ADMIRALTY |
| M/V OCEAN FORCE, IMO 8215613, its engines, tackle and apparel, | : | |
| Defendant *in rem*. | : | |
| and | : | |
| Redbrick Ventures, Ltd. | : | |
| Defendant *quasi in rem,* | : | |
| and | : | |
| The Master of the M/V OCEAN FORCE, Inchcape Shipping Services, | : | |
| Garnishees. | : | |
| Rapid Global Shipping, Inc., | : | |
| Intervenor Plaintiff, | : | |
| vs. | : | |
| CAC Maritime, Ltd., | : | |
| Intervenor Defendant, | : | |
| and | : | |
| The Master of the M/V OCEAN FORCE, | : | |
| Garnishee. | : | |

**SECOND AMENDED VERIFIED COMPLAINT WITH REQUEST
FOR ISSUE OF WARRANT OF ARREST AND ISSUE OF
PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT**

27852906.1

CAC Maritime, Ltd. ("CAC") hereby amends its complaint, continuing to bring this action against defendant OCEAN FORCE, IMO 8215613, its engines, tackle and apparel ("Vessel"), *in rem*, pursuant to Supplemental Rule C for Certain Admiralty and Maritime Claims, and pursuant to Supplemental B for Certain Admiralty and Maritime Claims against defendant Redbrick Ventures, Ltd. and states as follows:

### Jurisdiction and Venue

1. This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Fed. R. Civ. P. 9(h).

2. Venue is proper in this District because the Vessel is located in this District.

### The Parties

3. CAC is a vessel charterer located in Panama. Defendant Redbrick Ventures, Ltd. is owner of the Vessel and chartered the Vessel to CAC.

4. The Vessel is an ocean-going roll on-roll off vessel.

### Facts

5. On or about December 23, 2020 CAC chartered the Vessel from the Vessel's owners, Redbrick Ventures, Inc. c/o Primeshipping International, BVI corporation, office,  ofis 301N, ul Very Inber 5, Odessa, 65014, Ukraine ("Owners"), taking possession of the Vessel at or near Fall River, Massachusetts.   Almost immediately, CAC began to experience problems with the Vessel and cargo.  Owners had represented that the Vessel would have some small amount of Owners' equipment aboard, but instead, it was cargo; instead, there were aboard (and remain aboard) four 40 foot containers, and two twenty-foot containers, filled with hazardous cargo. The Vessel carrying Owners' hazardous cargo was never known by CAC, prior taking on the Vessel under the charter party, and never agreed by CAC.

27852906.1

6. The hazardous cargo is listed on the Master's cargo stow plan as "IMO 6.1 U.N. 1555," the International Maritime Organization code/designation for Antimony Potassium Tartrate, which on the U.S. OSHA SDS #: 25167 rev 101 10.7.2015 datasheet is described as follows: OSHA Classification:   Acute Toxicity - Oral; Acute Toxicity – Inhalation;  Hazard Category:  3 - Toxic if swallowed,  4 – Harmful if inhaled;  Inhalation: Harmful if inhaled. Irritating to the nose and throat and respiratory system. Overexposure may cause coughing, difficulty in breathing and chest pains.  Skin Contact: Contact may cause skin irritation.  Eye Contact: Contact may be irritating to the eyes.  Ingestion: Harmful or fatal if swallowed. Symptoms include salivation, cough, metallic taste, nausea, vomiting, bloody diarrhea, dizziness, irritability and muscular pain. May cause heart to beat irregularly or to stop.

7. Because Owners had failed to unload the excess - and hazardous - cargo from the Vessel, the Vessel could not fully load cargo at Fall River, causing CAC to lose profits; then proceeded to St. Martin and then to Guadaloupe, but experienced delays in loading.  The Vessel then proceeded to Jacmel, Haiti, where it was supposed to unload cargo, but did not because of problems with the port there.  The Vessel then proceeded from Jacmel to Wilmington, to take on further cargo.

8. On arrival at Wilmington, however, the Vessel could not take on the cargo to be loaded because the Vessel still had failed to discharge the unload cargo at Haiti and also was carrying the six containers left on the Vessel from a prior voyage and prior to the Charter Party with CAC.

9. The Vessel consequently was not fit for its purpose, namely, not being cleared with cargo before the Charter Party, and then failing to loading cargo and timely proceeding as required by the Charter Party.

10. CAC's damages are at least the following:

   a. **$55,000**: Revenue shut out for the voyage from Fall River, Massachusetts to St. Marc, St. Marc Haiti for lack of space to fit all cargo available for the voyage, owing to owners' refusal to remove their cargo/ items;

   b. **$6,100**: Owners refuse to put Vessel off hire, while taking one day for charterers to shift owner's cargo/ items from hold to deck;

   c. **$175,000**: Charterer forced to cancel the second voyage because of owners' refusal to move their cargo/ items and lost space needed for cargo to be booked for the voyage;

   d. **$52,840**: Vessel at anchorage St. Marc, Haiti December 31, 2020 - January 8, 2021 waiting for next voyage since second consecutive voyage – Fall River to St. Marc, was canceled;

   e. **$222,937.50**: Unpaid demurrage, voyage from St. Martin and Guadalupe to Jacmel, Haiti, sub-charterer refused to pay demurrage claiming cargo left behind for owners' refusal to remove their items/ cargo from the Vessel, and refusing notice of readiness;

   f. **$120,000**: Canceled voyage from Wilmington, Delaware to St. Marc, Haiti for booked cargo, due to owners' refusal to remove their items/ cargo from the Vessel;

   g. **$200,000**: Cancelation of voyage from Freeport, Bahamas to Veracruz, Colombia, full cargo of scrap crushed cars, to be positioning cargo for Veracruz (new trucks), due to owners' refusal to remove their items/cargo from the V

      h.      **$150,000**:  Cancelation of voyage from Altamira, Mexico to Cartagena, Colombia, customer/shipper canceled voyage and booked with others, because of Vessel's inability to make laycan because of problems experienced by the Vessel at Wilmington.

**Total damages, at least $981,877.50** from owners' breach of the charter party, as demanded below.

### Count I – Breach of Maritime Contract

11.    CAC incorporates the above paragraphs as if fully set forth herein.

12.    Owners of the Vessel have breached their maritime contract, namely, the Charter Party, with CAC as set out above.  CAC therefore demands judgment against the Vessel, as set out more fully below.

### Count II – Maritime Lien In Rem Against the Vessel and Proceeds

13.    CAC incorporates the above paragraphs as if fully set forth herein.

14.    CAC as a consequence of the breach of charter party holds maritime liens *in rem* against the Vessel and proceeds.   CAC therefore demands judgment against the Vessel and proceeds, as set out more fully below.

### Count III – Quasi In Rem Against Redbrick Ventures

15.    CAC incorporates the above paragraphs as if fully set forth herein.

16.    CAC as a consequence of the breach of charter party has suffered damages and therefore demands judgment against Redbrick Ventures as set out more fully below.

### Count IV: Maritime Attachment and Garnishment (Rule B)

17.    CAC incorporates the above paragraphs as if specifically set forth herein.

27852906.1

18.     CAC seeks issue of process of maritime attachment so that it may obtain payment for the amounts due to it as a consequence of defendant Redbrick Ventures' breach of charter party.

19.     No security for CAC's claims has been posted by Redbrick Ventures or anyone acting on its behalf to date.

20.     CAC cannot be found within this District within the meaning of Rule B, but is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of garnishees in this District, including but not limited to those named Garnishees herein.

## **Prayer for Relief**

WHEREFORE, CAC prays:

A.      That in response to Count I, this Court enter judgment against the Vessel and in favor of CAC for **at least $981,877.50** as demanded above and contractual interest plus further amounts for attorneys' fees of at least $150,000, **total, $1,131,877.50**.

B.      In response to Count II, that this Court order that the *in rem* claims against the Vessel of CAC proceed against the Vessel, *in rem*, and that on judgment CAC's maritime lien claims *in rem* be paid from the proceeds, in the amount of at least that demanded above;   and

C.      That in response to Count III, this Court enter judgment against defendant Redbrick Ventures and in favor of CAC for **at least $981,877.50** as demanded above and contractual interest plus further amounts for attorneys' fees of at least $150,000, **total, $1,131,877.50**.

D.      That in response to Count IV, since Defendant Redbrick Ventures cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing

27852906.1

the Clerk to issue Process of Maritime Attachment and Garnishment to the within named Garnishees, pursuant to Rule B, attaching all of Redbrick Ventures' tangible or intangible property or any other funds held by any garnishee, up to the amount of at least the amount demanded herein to secure CAC's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint;

      E.    That as provided in Supplemental Rule B, that such person over 18 years of age be appointed as moved for herein pursuant to Supplemental Rule B and Fed. R. Civ. P. 4(c) to serve process of Maritime Attachment and Garnishment in this action;

      F.    That this Court award CAC such other and further relief that this Court deems just and proper.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Timothy Jay Houseal*
Timothy Jay Houseal (Del. Bar ID No. 2880)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6682
thouseal@ycst.com

**OF COUNSEL**

J. Stephen Simms               *Attorneys for CAC Maritime, Ltd.*
Simms Showers LLP
201 International Circle, Ste. 230
Baltimore, Maryland 21030
Telephone:    (410) 783-5795
Facsimile:    (410) 510-1789
jssimms@simmsshowers.com

Dated: March 11, 2021

27852906.1

## **VERIFICATION**

I am a Principal of the law firm Simms Showers LLP, of counsel to CAC.

The facts alleged in the foregoing Second Amended Verified Complaint are true and correct to the best of my knowledge and information based upon the records of CAC made available to me by CAC.  Authorized officers of CAC are not readily available in this District to make verifications on CAC's behalf.  I am authorized to make this verification on CAC's behalf.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in this District. There is no record of any general or resident agent authorized to accept service of process for Redbrick Ventures in this District.

        Pursuant to 28 U.S.C. § 1746(1), I solemnly declare under penalty of perjury that the foregoing is true and correct.

        Executed on March 11, 2021.

        */s/ J. Stephen Simms*
        J. Stephen Simms
        Simms Showers LLP
        201 International Circle, Suite 230
        Baltimore, Maryland 21030
        Tel:  410-783-5795
        Email: jssimms@simmsshowers.com