# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAC Maritime, Ltd., | : | |
| | : | |
| Plaintiff, | : | C.A. No. 21-202-RGA |
| | : | |
| vs. | : | IN ADMIRALTY |
| | : | |
| M/V OCEAN FORCE, IMO 8215613, its engines, tackle and apparel, | : | |
| | : | |
| Defendant *in rem*. | : | |
| and | : | |
| | : | |
| Redbrick Ventures, Ltd. | : | |
| | : | |
| Defendant *quasi in rem*, | : | |
| | : | |
| Rapid Global Shipping, Inc., | : | |
| | : | |
| Intervenor Plaintiff, | : | |
| vs. | : | |
| | : | |
| CAC Maritime, Ltd., | : | |
| | : | |
| Intervenor Defendant, | : | |
| and | : | |
| | : | |
| The Master of the M/V OCEAN FORCE, | : | |
| | : | |
| Garnishee. | : | |

# **EMERGENCY MOTION TO VACATE ARREST AND ATTACHMENT WITH INCORPORATED MEMORANDUM OF LAW**

Dated: March 18, 2021

        Respectfully submitted,

        **BARNARD MEZZANOTTE**
        **PINNIE, SEELAUS & KRAFT, LLP**

        */s/ Denise S. Kraft*
        Denise S. Kraft (DE Bar No. 2778)
        Anne Kai Seelaus (DE Bar No. 4970)
        1205 N. Orange Street
        PO Box 26304
        Wilmington, DE  19899
        (302) 594-4535
        dkraft@bmplaw.net
        kseelaus@bmplaw.net

        *Attorneys for Redbrick Ventures, Ltd. and*
        *the M/V OCEAN FORCE, in rem.*

**Of counsel:**
Briton P. Sparkman *(pro hac vice forthcoming)*
Melissa Patzelt-Russo (*pro hac vice forthcoming*)
**CHALOS & CO, P.C.**
55 Hamilton Avenue
Oyster Bay, New York 11771
Telephone: (516) 714-4300
Facsimile: (516) 750-9051
bsparkman@chaloslaw.com
mrusso@chaloslaw.com

**TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDINGS..................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND......................................................................2

ARGUMENT...................................................................................................................................3

A.    REDBRICK IS ENTITLED TO A PROMPT HEARING...................................................3

B.    THE BURDEN IS ON THE PLAINTIFF TO SHOW WHY THE ARREST AND ATTACHMENT SHOULD NOT BE VACATED...................................3

        1.    Rule C Arrest for Alleged Maritime Lien.............................................................4

        2.    Rule B Attachment for Alleged Maritime Claim....................................................5

C.    THE ARREST MUST BE VACATED AS PLAINTIFF IS NOT ENTITLED TO A MARITIME LIEN..............................................................................6

D.    THE RULE B ATTACHMENT MUST BE VACATED BECAUSE CLAIMANT CAN BE FOUND WITHIN THE DISTRICT...........................................10

E.    AS A MATTER OF EQUITY, IT IS PROPER TO VACATE THE ATTACHMENT..........................................................................................................11

CONCLUSION..............................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*,
    992 F. Supp. 1423 (M.D. Fla. 1997)......................................................................................4

*AGF Marine Aviation & Transport v. Cassin*,
    544 F.3d 255 (3d Cir. 2008).....................................................................................................8

*Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904 (4th Cir. 1981)................................................5-7

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd*,
    460 F.3d 434 (2d Cir. 2006).....................................................................................................6

*Bankers Trust Int'l Ltd. v. Todd Shipyards Corp. (HALCYON ISLE)*,
    1981 App.Cas. 221, 1980 A.M.C. 1221 (P.C.1980)................................................................9

*Bay Casino, LLC v. M/V ROYAL EMPRESS*,
    20 F. Supp. 2d 440 (E.D.N.Y. 1998)...................................................................................4, 5

*Carbotrade S.p.A. v. Bureau Veritas*, 99 F.3d 86 (2d Cir. 1996),
    *cert. denied, Veritas v. Carbotrade S.p.A.*, 117 S. Ct. 2454 (1997)....................................7

*Cargo-Levant Schiffahrtsgesellscharft Mbh v. PSL Ltd.*,
    2014 U.S. Dist. LEXIS 74750 *18 (D. Del. 2014)...............................................................6

*Dampskibsselskabet Norden A/S v. 25,001.078 Metric Tons of Fly Ash*,
    308 F. Supp. 3d. 693 (N.D.N.Y. 2018)....................................................................................4

*Garcia v. M/V Kubbar*, 4 F. Supp. 2d 99 (N.D.N.Y. 1998)..........................................................5

*Genuine Parts Co. v. Cepec*,
    137 A.3d 123, 2016 Del. LEXIS 247 (Del. 2016)..............................................................11

*Great Lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*,
    585 F.3d 236 (5th Cir. 2009)....................................................................................................7

*Hunley v. Ace Maritime Corp.*, 927 F.2d 493 (9th Cir. 1991)........................................................6

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770,
    79 L. Ed. 2d 790, 104 S. Ct. 1473 (1984)..........................................................................7

*Lion de Mer S.A. v. M/V LORETTA D*, 1998 U.S. Dist. LEXIS 10182,
    1998 AMC 1410 (D. Md. 1998).........................................................................................9

*Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d. 519 (S.D.N.Y. 2006).............................................4

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,
    92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)..........................................................................7

*Newport News Shipbuilding and Dry Dock Co. v. S.S. INDEPENDENCE*,
    872 F. Supp. 262 (E.D. Va. 1994).....................................................................................8

*Petroleos Mexicanos Refinacion v. M/T King A*,
    54 F.3d. 99 (3d. Cir. 2009)...............................................................................................5

*ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105 (2d Cir. 2009)............................3

*Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983 (5th Cir. 1992)..........................5, 6, 9

*STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*,
    560 F.3d 127 (2d Cir. 2009)............................................................................................10

*The LAKE PACHUTA*,
    56 F.2d 627 (S.D.N.Y 1930), *aff'd* 60 F.2d 876 (2d Cir. 1932)......................................11

*Triton Marine Fuels Ltd., S.A. v. M/V Pacific Chukotka*,
    575 F.3d 409 (4th Cir. 2009)............................................................................................7

*United Shipping Servs. Three v. U.S. Express Lines, Ltd.,*
    1998 U.S. Dist. LEXIS 17325 (E.D. Pa. 1998).................................................................10

*Vandewater v. Mills (THE YANKEE BLADE),*
    60 U.S. (19 How.) 82, 89, 15 L. Ed. 554 (1857)................................................................9

*Vaughan v. Atkinson*, 369 U.S. 527, 530 (1962)...........................................................................11

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*,
    348 U.S. 310, 75 S. Ct. 368, 370, 99 L. Ed. 337 (1955)..................................................7-8

**Statutes**

Del. Code Ann. tit. 8, § 376......................................................................................................11

Del. Code Ann. tit. 10, § 3104....................................................................................................11

**Rules**

Supplemental Rule B.........................................................................................................*passim*

Supplemental Rule B(1)..........................................................................................................5, 10

Supplemental Rule B(1)(b).......................................................................................................5, 10

Supplemental Rule C.........................................................................................................*passim*

Supplemental Rule C(1)........................................................................................................4, 6, 9

Supplemental Rule C(6).................................................................................................................2

Supplemental Rule E(4)(f)....................................................................................................1, 3, 4, 5

Local Rule 7.1.2(b).........................................................................................................................3

## EMERGENCY MOTION TO VACATE ARREST AND ATTACHMENT WITH INCORPORATED MEMORANDUM OF LAW

COMES NOW, Defendant REDBRICK VENTURES, LTD. (hereinafter "Redbrick"),[1] in its own capacity as a Supplemental Rule B Defendant and as a Specially Appearing Claimant and Owner of the *in rem* Defendant M/V OCEAN FORCE IMO 8215613 (hereinafter the "Vessel"), by and through undersigned counsel, who respectfully moves this Court, pursuant to the memorandum of law below and the declaration of English solicitor Asad Naqvi ("Naqvi Declaration"), for an order vacating the Rule C arrest of the Vessel and the Rule B attachment of Defendant's property located in the District (*i.e.* also the Vessel).

## NATURE AND STAGE OF PROCEEDINGS

This is an action brought by Plaintiff CAC Maritime Ltd. (hereinafter "CAC"), pursuant to the Supplemental Admiralty Rules for Maritime Claims, specifically Supplemental Rule C and Supplemental Rule B. *See* D.I. 1; D.I. 31.  The Rule C action is premised on the allegation that there is a maritime lien against the Vessel, *in rem.*  D.I. 31, at ¶¶13-14.  The Rule B attachment is an ancillary action seeking security from Redbrick for the alleged breach of a maritime contract. *Id*., at ¶¶ 11-12, 15-20.  The substantive merits of the dispute between Plaintiff and Redbrick will not be resolved by this Court, but will be referred to London Arbitration (with English law to apply) consistent with the parties' law and jurisdiction clause.  Notwithstanding, Supplemental Rule E(4)(f) provides Defendant and Claimant Redbrick with the right to seek a prompt post-seizure hearing through a motion to vacate based on various substantive and procedural defects in Plaintiff's Rule C arrest and Rule B attachment in this case.

---

[1] Claimant Redbrick expressly reserves all rights and defenses afforded it under the Federal Rules of Civil Procedure, the Supplemental Admiralty Rules, and/or any other defenses available.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about December 13, 2020, non-party Primetransport Company OU, as commercial managers of the Vessel entered into a charter party agreement with Plaintiff, on behalf of Redbrick, for use of the Vessel. The Vessel remains under time charter to CAC and daily hire at the rate of USD 6,100 is accruing. *See* Exhibit A, Naqvi Declaration, at Exhibit 1. The parties have several pending disputes by and between themselves related to the terms and conditions of the charter party agreement and the cargo. Currently, CAC has hire outstanding in the amount of not less than **$385,947.25** due and owing to Redbrick. In addition, Redbrick has supplied the bunkers currently onboard and being consumed by the Vessel during the course of the present improper seizure orchestrated by CAC while the Vessel has been under arrest (and now attachment).

On or about February 12, 2021, Plaintiff CAC filed a Verified Complaint with Request for Issuance of Warrant of Arrest. D.I. 1. Shortly thereafter a Warrant of Arrest was issued [D.I. 10] and the U.S. Marshal arrested the Vessel. On or about February 24, 2021, Plaintiff filed a First Amended Verified Complaint with Request for Issuance of Warrant of Arrest [D.I. 13]. On March 9, 2021, Claimant Redbrick entered a restricted appearance pursuant to Rule E(8) and filed a Verified Statement of Interest and Claim of Owner. D.I. 26.[2] On or about March 11, 2021, the Parties filed a Joint Stipulation and Agreed Motion to Vacate the Clerk's Default, Vacate the Order for Sale of the Vessel, and for Plaintiff to file a Second Amended Verified Complaint. D.I. 29. The Stipulation was "So Ordered" by the Court on March 12, 2021. D.I. 30.

---

[2] Redbrick had been attempting to negotiate commercially for resolution of the disputes by and between CAC and Redbrick and had inadvertently not timely filed a Verified Statement of Interest pursuant to Rule C(6). The procedural defect has since been corrected through the Verified Statement. D.I. 26.

Plaintiff's Second Amended Complaint was filed on the docket and the Court granted Plaintiff's motion for Writ of Maritime Attachment (pursuant to Supplemental Rule B) on March 16, 2021. *See* D.I. 31, 37. Redbrick seeks to vacate the Order of Arrest and Order of Attachment, so that Vessel may be released and can continue her journey and trade.

## ARGUMENT

### A.  REDBRICK IS ENTITLED TO A PROMPT HEARING.

Supplemental Rule E provides in relevant part:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a ***prompt hearing*** at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

FED. R. CIV. P. SUPP. R. E(4)(f). (emphasis added). Rule E speaks in mandatory terms and is necessary to give a claimant to the property its day in Court after a plaintiff has been able to obtain *ex parte* relief, outside the adversary system and with only minimal oversight. *See ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 112 (2d Cir. 2009) ("The rule is 'designed to satisfy the constitutional requirement of due process by guaranteeing to the [defendant] a prompt post-seizure hearing *at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings*.'")(citing Supp. Rule E, Advisory Committee Notes (1985 Amendment)(emphasis added)). Redbrick is filing a separate motion to shorten the time for Plaintiff to respond to the motion to vacate and for prompt hearing consistent with Local Rule 7.1.2(b).

### B.  THE BURDEN IS ON THE PLAINTIFF TO SHOW WHY THE ARREST AND ATTACHMENT SHOULD NOT BE VACATED.

As set forth above, the present motion to vacate is submitted pursuant to Supplemental Rule E(4)(f). Plaintiff bears the burden of demonstrating at least, reasonable grounds, to support

3

the continued arrest and attachment of the Vessel. Plaintiff "must demonstrate that 'reasonable grounds' exist for the [arrest/attachment], and that all technical requirements for effective [arrest] have been met." *Dampskibsselskabet Norden A/S v. 25,001.078 Metric Tons of Fly Ash*, 308 F. Supp. 3d. 693, 696 (N.D.N.Y. 2018) (citing *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d. 519, 527 (S.D.N.Y. 2006)); *see also 20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 (M.D. Fla. 1997) ("Plaintiff has the burden under Supplemental Rule E(4)(f) to come forward with sufficient evidence to show there was probable cause for the arrest or attachment of the [property]."). Plaintiff cannot meet that burden here. Plaintiff has not, and cannot, assert a valid maritime lien against the Vessel, *in rem*. Accordingly, the Rule C Arrest must be vacated as a matter of law. In addition, Plaintiff has not satisfied the requirements of Supplemental Rule B and, as such, the Rule B attachment should also be vacated.

### 1. Rule C Arrest for Alleged Maritime Lien

Supplemental Rule C is the procedural mechanism used to arrest property that is subject to a maritime lien or other U.S. statute that creates an *in rem* cause of action, and states in relevant part: "An action *in rem* may be brought: (a) to enforce any maritime lien." FED. R. CIV. P. SUPP. R. C(1)(a). In order to sustain an arrest, a plaintiff must show at the Rule E(4) hearing that it has fulfilled the filing and service requirements of Rules C and E. Supplemental Rule C permits an action *in rem* to be brought to "enforce a maritime lien" so long as the Complaint is 1) verified; 2) describes the property that is the subject of the action, and 3) states that the property is within the district. FED. R. CIV. P. SUPP. R. C (1) – (2). If a plaintiff fails to demonstrate that it has met *any* of the requirements of Rules C and/or E, the district court must vacate the arrest. *See Bay Casino, LLC v. M/V ROYAL EMPRESS*, 20 F. Supp. 2d 440, 448 (E.D.N.Y. 1998). In that

4

action, the District Judge for the Eastern District of New York summarized the requirements to sustain a Rule C arrest as follows:

> [A]lthough arrest of maritime property is a remedy available within the maritime jurisdiction, it requires an underlying maritime cause of action supporting a maritime lien in the property arrested . . . ***In order to avail itself of the device of maritime arrest, a plaintiff has the burden of showing that it is entitled to a maritime lien; if it cannot do so, the arrest fails and must be dissolved***. *See* Supplemental Rule E(4)(f) (stating that the plaintiff "shall be required to show why the arrest or attachment should not be vacated.").

*Id.* (emphasis added); *see also, Garcia v. M/V Kubbar*, 4 F. Supp. 2d 99, 103 (N.D.N.Y. 1998) ("'A maritime lien is an essential predicate for the arrest of a vessel in a private *in rem* action.' In the absence of such a lien, the *in rem* action may not continue") (*quoting Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 908 (4th Cir. 1981)); *see also Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 987 (5th Cir. 1992). An action *in rem* pursuant to Rule C to enforce a maritime lien on a vessel must be premised on the existence of a <u>valid maritime lien</u> at the time that the action was filed. *See Petroleos Mexicanos Refinacion v. M/T King A,* 54 F.3d. 99, 102 (3d. Cir. 2009). Plaintiff does not have a maritime lien and therefore the Rule C arrest must be vacated.

### 2. <u>Rule B Attachment for Alleged Maritime Claim</u>

To obtain a maritime attachment, a plaintiff must comply with Supplemental Rule B, which holds:

> ***If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed***, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process . . . The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

5

FED. R. CIV. P. SUPP. R. B(1)(a)-(b)(emphasis added).

It is the Plaintiff's burden to establish the right to attachment and that all requirements of Supplemental Rule B have been satisfied. *See Cargo-Levant Schiffahrtsgesellscharft Mbh v. PSL Ltd.,* 2014 U.S. Dist. LEXIS 74750 *18 (D. Del. 2014). To meet this burden, a Plaintiff must show at the Rule E(4) hearing that it has fulfilled the "filing and service requirements of Rules B and E" and that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Id.* (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd*, 460 F.3d 434, 445 (2d Cir. 2006))(footnote omitted). If a plaintiff fails to demonstrate that it has met *any* of the requirements of Rules B and E, the district court must vacate the attachment. *Aqua Stoli,* 460 F.3d at 445. As Redbrick is found in the district through its registration with the Delaware Secretary of State and appointment of a registered agent, Plaintiff's Second Amended Complaint fails to comply with the requirements of Rule B, Plaintiff cannot meet its burden and the attachment must be vacated.

Plaintiff cannot demonstrate reasonable grounds for the continued arrest of the Vessel. The charter party at issue is subject to English Law and pursuant to English Law, Plaintiff does not possess a valid maritime lien. As such, the arrests must be vacated and the Vessel released.

**C.    THE ARREST MUST BE VACATED AS PLAINTIFF IS NOT ENTITLED TO A MARITIME LIEN**

Plaintiff does not argue that its *in rem* claim is permitted (or provided for) by any federal statute. Accordingly, to satisfy the requirements of Rule C, Plaintiff must establish the existence of a maritime lien to support *in rem* jurisdiction. *See* Supplemental Rule C(1)(a); *see also Sembawang Shipyard, Ltd. v. Charger, Inc. and M/V Charger*, 955 F.2d 983, 987 (5th Cir.); *Hunley v. Ace Maritime Corp.*, 927 F.2d 493, 496 (9th Cir. 1991) (a maritime action *in rem* will

6

be available "only in connection with a maritime lien"); *Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 908 (4th Cir. 1981). Whether such a lien exists is a question of **substantive law**. *See Amstar Corp*, 664 F.2d at 908 (maritime liens are "an integral aspect of substantive, rather than procedural maritime law").

Substantive law, unlike procedural law, must be applied according to choice-of-law principles. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 n.10, 79 L. Ed. 2d 790, 104 S. Ct. 1473 (1984). These principles require a court to apply the substantive law of a foreign forum where that foreign jurisdiction has the greatest interests in the litigation. *Carbotrade S.p.A. v. Bureau Veritas*, 99 F.3d 86, 89 (2d Cir. 1996), *cert. denied, Veritas v. Carbotrade S.p.A.*, 117 S. Ct. 2454 (1997). The relationship between the parties in this case is governed by a charter party agreement. Specifically, on December 13, 2020, the charter party at issue was entered into between Plaintiff and Defendant Redbrick. Clause 22(a) of the charter party contains a Law and Arbitration clause which states, "This Charter Party shall be governed by and construed in accordance with **English law** . . ." *See Exhibit A,* Naqvi Decl., at ¶¶ 4-6 and Exhibit 1. (emphasis added).

In determining the enforceability of a choice-of-law provision, the Court should look to principles of federal maritime law. *See generally M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) (rejecting application of the law of the forum and instead applying the substantive law of the parties' contract); *see also Triton Marine Fuels Ltd., S.A. v. M/V Pacific Chukotka*, 575 F.3d 409, 413 (4th Cir. 2009). Where, as here, there is a mandatory contractual choice of law clause, that clause must be given deference and applied by the Court. *Id*. "Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized **as valid and enforceable**." *Great Lakes Reinsurance (UK) PLC v.*

7

*Durham Auctions Inc.*, 585 F.3d 236, 239 (5th Cir. 2009) (emphasis added) (quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S. Ct. 368, 370, 99 L. Ed. 337 (1955); (citing with approval *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 262 (3d Cir. 2008)). The charter party agreement is governed by English law and therefore in order for Plaintiff to demonstrate a right to a maritime lien for an alleged breach of the charter party agreement, Plaintiff must show a right to a maritime lien under English law for such a claim. No such showing has (or can) be made by Plaintiff and the Rule C arrest must be vacated as a maritime lien.

As a matter of hornbook English law, Plaintiff is not entitled to a maritime lien for a claim of a breach of a charter party. *See Exhibit A,* Naqvi Declaration at *¶ 8; see also Exhibit B*, English Legal Authorities cited in Naqvi Declaration. English law limits maritime lien claims to a narrow set of circumstances and claims arising from: (i) damage done by a ship, (ii) salvage remuneration, (iii) seamen's and masters' wages, (iv) maters' disbursements and (v) bottomry. *Id.*, at *¶7*. None of those items are present here and none of them have been alleged in Plaintiff's Second Amended Verified Complaint. *See* D.I. 31. Rather, the only allegation which Plaintiff has asserted, without citation to any legal right, is that the breach of a maritime contract gives rise to a maritime lien in favor of Plaintiff. *Id*., at ¶ 14. There is no such right as a matter of English law and therefore the arrest must be vacated. *See* Naqvi Decl., at ¶¶ 6-8.

Supplemental Rule C of the Federal Rules of Civil Procedure limits the availability of an *in rem* action "to enforce any maritime lien." *Id*. When foreign laws determine the parties' rights, such as English law which governs the charter party agreement here, nothing less than a maritime lien under the applicable foreign law will sustain an *in rem* action in a court of the United States. *Newport News Shipbuilding and Dry Dock Co. v. S.S. INDEPENDENCE*, 872 F.

Supp. 262, 265 (E.D. Va. 1994). A right of arrest under foreign law is **not** sufficient. *Lion de Mer S.A. v. M/V LORETTA D*, 1998 U.S. Dist. LEXIS 10182, 1998 AMC 1410, 1413 (D. Md. 1998) (noting that "the inquiry here, however, is not whether the vessel might be arrested under [Russian] law, but whether [Russian] law *gives rise to a maritime lien*" based on plaintiff's claim) (emphasis added).

The Fifth Circuit Court of Appeals' summary in *Sembawang Shipyard, Ltd.*, is especially instructive to this matter.[3] *Sembawang Shipyard, Ltd.*, 955 F.2d at 987. In that matter, the Fifth Circuit vacated the Rule C arrest as the underlying shipbuilding contract was governed by Singapore law and there was no entitlement to a maritime lien under Singapore (*i.e.* English) law for such a claim. *Id*. The Fifth Circuit summarized:

> A statutory right of action in rem is not the same as a maritime lien, however. For instance, a maritime lien is a powerful, secret charge on a thing, and follows that thing into the hands of a buyer, even if that buyer had no notice of it. Because of the power of the maritime lien, it has been strictly construed for centuries. *E.g., Vandewater v. Mills (THE YANKEE BLADE),* 60 U.S. (19 How.) 82, 89, 15 L. Ed. 554 (1857) (discussing the ancient civil law origins of the maritime lien and its strict construction). Under Supplemental Rule C(1)(a), a maritime lien is required, and a statutory right of action *in rem* will not suffice. Nor will it suffice under Supplemental Rule C(1)(b) when the statute conferring that right of action is not a statute of the United States. We hold, therefore, that Sembawang improperly proceeded against the Vessel *in rem* under Supplemental Rule C.

*Id*., at 988-89. Here, the charter party is governed by English Law. As outlined in more detail in the Declaration of Asad Naqvi, English Law does not permit a maritime lien for claims for breach of a charter party agreement at issue in this matter. *See Naqvi Declaration*, at ¶ 6-8.

---

[3] Although the substantive law governing the charter party in *Sembawang* was Singapore law, the Fifth Circuit held that was a distinction without a difference given the uniform approach by Singapore to adopt and apply English law with respect to admiralty and maritime law. *Id*., at 988 citing *Bankers Trust Int'l Ltd. v. Todd Shipyards Corp. (HALCYON ISLE),* 1981 App.Cas. 221, 1980 A.M.C. 1221 (P.C.1980). In all aspects relevant here, Singapore law and English law are the same. *Id.* at 1222.

Thus, the Rule C arrest of the Vessel must be vacated and the in rem Defendant M/V OCEAN FORCE dismissed from the case as a matter of law.

**D.   THE RULE B ATTACHMENT MUST BE VACATED BECAUSE CLAIMANT CAN BE FOUND WITHIN THE DISTRICT**

As set forth above, there are four prerequisites for Plaintiff to sustain a Rule B maritime attachment. Here, Plaintiff has failed to meet the second requirement, *i.e.* demonstrating by affidavit that defendant cannot be "found within the district" as of the date of the Second Amended Verified Complaint. *See* Rule B(1)(b); see also Fed. R. Civ. P. Adm. Supp. R. B Adv. Comm. N. ("The time for determining whether a defendant is 'found' in the district *is set at the time of filing the verified complaint that prays for attachment* and the affidavit required by Rule B(1)(b).")(emphasis added). Here at the time of Plaintiff's filing of the Second Amended Complaint, *i.e.* on March 12, 2021 [D.I. 31], Defendant Redbrick was readily found in the District of Delaware if Plaintiff had simply completed a cursory search of the Delaware Secretary of State Division of Corporations. *See* Exhibit C, confirming that Redbrick Ventures, Ltd. is registered in the State of Delaware and had a registered agent for service of process within the district, *i.e.*: Incorp Services, Inc., 919 North Market Street, Wilmington, Delaware 19801. The Plaintiff's verification fails to identify whether any such search was completed. *See* D.I. 31, at p. 8.

"Although Rule B does not expressly define 'found within the district,'" Courts have routinely found it to require a two-prong test: first, whether the defendant can be found within the district in terms of jurisdiction, and second, if so, whether [it] can be found for service of process. *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 130 (2d Cir. 2009) (internal quotation marks omitted); *United Shipping Servs. Three v. U.S. Express Lines, Ltd.,* 1998 U.S. Dist. LEXIS 17325 *4 (E.D. Pa. 1998). Jurisdiction can be premised on general

or specific jurisdiction.  Here, Redbrick has registered to do business in the state of Delaware and appointed an agent for service of process.  *See* Exhibit C.  Redbrick, as a foreign company which regularly transacts business in the state of Delaware (as evidenced by the M/V OCEAN FORCE regularly calling the port of Wilmington), can be found in the district pursuant to Delaware's long-arm jurisdiction statute and may be properly served through its registered agent.  *See Genuine Parts Co. v. Cepec*, 137 A.3d 123, 2016 Del. LEXIS 247, (Del. 2016) (citing Del. Code Ann. tit. 10, § 3104 and holding "The long-arm statute operates smoothly in tandem with Del. Code Ann. tit. 8, § 376, which provides that a foreign corporation can be served via its registered agent in the state.").

As Redbrick is subject to jurisdiction in Delaware and has appointed a registered agent, Incorp Services, to accept service of process in the state prior to the date of the Second Amended Verified Complaint seeking issuance of the writ of attachment (dated March 11, 2021). Accordingly, Redbrick is "found" within this judicial district for the purposes of Rule B and the maritime attachment must be vacated as a matter of law.

**E.     AS A MATTER OF EQUITY, IT IS PROPER TO VACATE THE ATTACHMENT**

This Court has the equitable discretion to vacate the Orders of Arrest and Attachment and dismiss this case. *Vaughan v. Atkinson*, 369 U.S. 527, 530 (1962) ("Equity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief."). It is inequitable to allow Plaintiff to continue to disrupt Redbrick's Vessel and potentially cause significant damages, solely as a pressure point where it has failed to comply with the requirements of Rule B and Rule C.  This Court should exercise its discretion to vacate the orders, release the Vessel, and dismiss this action. *The LAKE PACHUTA*, 56 F.2d 627, 629 (S.D.N.Y 1930), *aff'd* 60 F.2d

876 (2d Cir. 1932) (Where Judge Hazel recognized over ninety (90) years ago that "courts of admiralty act as courts of equity and according to what is just and right.").

## CONCLUSION

**WHEREFORE**, Defendant, REBRICK VENTURES LTD., requests that this Honorable Court grant this Motion to Vacate the Rule C Arrest and Rule B Attachment and for such additional relief as this Court deems just and proper.

Dated:  March 18, 2021                                   Respectfully submitted,

**BARNARD MEZZANOTTE
PINNIE, SEELAUS & KRAFT, LLP**


*/s/ Denise S. Kraft*
Denise S. Kraft (DE Bar No. 2778)
Anne Kai Seelaus (DE Bar No. 4970)
1205 N. Orange Street
PO Box 26304
Wilmington, DE  19899
(302) 594-4535
dkraft@bmplaw.net
kseelaus@bmplaw.net

*Attorneys for Redbrick Ventures, Ltd. and the M/V OCEAN FORCE, in rem.*

**Of counsel:**
Briton P. Sparkman (*pro hac vice forthcoming)*
Melissa Patzelt-Russo (*pro hac vice forthcoming*)
**CHALOS & CO, P.C.**
55 Hamilton Avenue
Oyster Bay, New York 11771
Telephone: (516) 714-4300
Facsimile: (516) 750-9051
bsparkman@chaloslaw.com
mrusso@chaloslaw.com