IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CAC Maritime, Ltd.,

                      Plaintiff;

      v.

Redbrick Ventures, Ltd.,

           Defendant *quasi in rem,*

Rapid Global Shipping, Inc.,

           Intervenor Plaintiff,

      v.

CAC Maritime, Ltd.,

           Intervenor Defendant,

and

The Master of the M/V OCEAN FORCE,

           Garnishee.

Civil Action No. 21-202-RGA

IN ADMIRALTY

MEMORANDUM ORDER

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me are five motions:

1. Plaintiff's motion to dismiss pursuant to Rule 41(a) (D.I. 54);

2. Defendant's motion for an order for countersecurity pursuant to Supplemental Rule E(7) (D.I. 50);

3. Defendant's motion for an order for security for costs pursuant to Supplemental Rule E(2) (D.I. 50);

4. Defendant's motion for an order to set bond amount pursuant to Supplemental Rules E(5) and E(6) (D.I. 50); and

5. Plaintiff's renewed motion for interlocutory sale pursuant to Supplemental Rule E(9)(b) (D.I. 62).

The matters have been fully briefed. (D.I. 51, 53, 55, 60, 62, 63, 65, 66, 67). For the reasons set forth below, Plaintiff's motion to dismiss is DENIED, Defendant's motion for an order for countersecurity is DENIED, Defendant's motion for an order to set bond amount is DENIED, and Plaintiff's renewed motion for interlocutory sale is GRANTED. IT IS ORDERED that Plaintiff will provide the Court with evidence as to its financial ability to post security for costs.

## I.     BACKGROUND

On or about December 13, 2020, non-party Primetransport Company, as commercial manager of the M/V OCEAN FORCE, IMO 8215613 ("Vessel") entered into a charter party agreement with Plaintiff CAC Maritime ("CAC"), on behalf of Defendant Redbrick, for use of the Vessel. (D.I. 49 at 6). The Vessel was seized by CAC pursuant to a Rule C maritime lien claim on or about February 12, 2021. (D.I. 1). CAC subsequently filed a Second Amended

Complaint and converted the Rule C arrest in rem to a Rule B attachment for its maritime claim. (D.I. 31). The Supplemental Rule C warrant of arrest was vacated, and the Supplemental Rule B maritime attachment was upheld. (D.I. 48). Redbrick filed an Answer to CAC's Second Amended Complaint and included a compulsory counterclaim pursuant to Rule of Civil Procedure 13(a) and Supplemental Rule E(7). (D.I. 49). Redbrick filed a motion for countersecurity, security for costs, and to set bond amount. (D.I. 50). CAC filed a motion to dismiss Redbrick's counterclaim and filed a renewed motion for interlocutory sale of the Vessel. (D.I. 54; D.I. 62).

## II.    LEGAL STANDARD

Rule 41(a) allows a plaintiff to voluntarily dismiss an action without a court order by filing a notice of dismissal "before the opposing party serves either an answer or a motion for summary judgment" or by filing a notice of dismissal signed by all parties to the action. FED. R. CIV. P. 41(a)(1)(A). However, to prevent Plaintiffs from abusing their ability to dismiss cases and re-file cases at will, thereby harassing other parties, Rule 41(a)(B) provides a "two-dismissal" rule. *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963). If "the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits," FED. R. CIV. P. 41(a)(1)(B), and the claim is barred from being presented in future litigation by the principle of *res judicata*. Although the two-dismissal rule in Rule 41(a)(1)(B) is mandatory, the rule must be strictly construed. *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1017 (2d Cir. 1976). "The primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading." *Id.* "Where the purpose behind the 'two dismissal' exception

3

would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to construe or apply the exception too broadly." *Id.*

Supplemental Rule E of the Rules of Federal Civil Procedure provides additional, general rules for actions occurring *in rem* and *quasi in rem*. Supplemental Rule E(7) allows a counterclaimant who has provided security for damages in the original action to request countersecurity for counterclaims that "arise[] from the transaction or occurrence that is the subject of the original action." "Although this Rule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the [Rule] makes clear that the trial court possesses broad discretion in deciding whether to order countersecurity under such conditions." *Result Shipping Co. v. Ferruzzi Trading USA, Inc.,* 56 F.3d 394, 399 (2d Cir. 1995). "In deciding whether countersecurity should be ordered, two major principles govern: (1) parties should be placed on an equal footing with respect to security; and (2) Rule E(7) is not meant to be so burdensome so as to prevent the bringing of the suit." *Totalmar Navigation Corp. v. ATN Indus., Inc.,* 2008 WL 5111316, at *7 (S.D.N.Y. Dec. 3, 2008).

Supplemental Rule E(2)(b) allows the court to require any party at any time, "subject to the provisions of Rule 54(d) and of relevant statutes," to provide security which the court will use to "pay all costs and expenses that shall be awarded against the party by any interlocutory order or by the final judgment, or on appeal by any appellate court." The court "has broad discretion to order a party to post security for costs," and the court may use Supplemental Rule E(2)(b) "to protect parties affected by [an in rem] seizure." *Result Shipping,* 56 F.3d at 401;

4

*Merchants Nat. Bank of Mobile v. Dredge General G. L. Gillespie,* 663 F.2d 1338, 1344 (5th Cir. 1981).

Supplemental Rule E(5) states the types of security that can be provided by the party whose property has been seized to release that property from custody. A party may request the court to reduce the amount of security provided, on hearing or motion, for "good cause" under Rule E(6).

Supplemental Rule E(9) allows a party to petition the court for an interlocutory sale of attached property if at least one of three conditions are satisfied: "(A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing release of the property." However, even if one the conditions is present, an interlocutory sale under Supplemental Rule E(9) is not mandatory but is at the discretion of the court. *Triton Container Intern. Ltd. v. Baltic Shipping Co.,* 1995 WL 217483, at *2 (E.D. La. April 12, 1995).

## III.    DISCUSSION

### A.  Motion to Dismiss Pursuant to Rule 41(a) or Rule 12(b)(6)

CAC argues that this court should dismiss Redbrick's counterclaims pursuant to Rule 12(b)(6) or enter summary judgment against Redbrick pursuant to Rule 41(a). (D.I. 55 at 1). CAC states that because Redbrick brought the same claims against CAC in the U.S. District Court for the Western District of Pennsylvania and in the U.S. District Court for the Southern District of Alabama and voluntarily dismissed both of those cases pursuant to Rule 41(a), the double-dismissal should be regarded as an adjudication on the merits and bar Redbrick from bringing its counterclaims. (*Id.*).

Redbrick argues that both the Western District of Pennsylvania action and the Southern District of Alabama action were initiated solely to attach property pursuant to Supplemental Rule B for security for an upcoming London Arbitration. (D.I. 63 at 3–4). Redbrick argues further that it voluntarily dismissed both cases because CAC's property, necessary for a Supplemental Rule B attachment, was not found in either case to be within the courts' respective jurisdictions and therefore the only option was to dismiss in each action. (*Id.* at 5). Specifically, Redbrick states that it relied upon the sworn testimony of Defendant's agent in the Western District of Pennsylvania action and an Answer to Writ of Garnishment and Interrogatories filed by the bank where CAC's funds were believed to be kept in the Southern District of Alabama action. (*Id.* at 4–5). Redbrick maintains that because the court was forced to dismiss both cases due to lack of jurisdiction, the dismissals are not subject to the double dismissal rule under Rule 41(a). (*Id.* at 9–11). Redbrick also argues that the relief sought in this case is not the same as the relief sought in the previous actions because Redbrick is now seeking countersecurity under Supplemental Rule E(7) and not security as a basis for *quasi in rem* jurisdiction under Supplemental Rule B. (*Id.* at 9).

Here, the purpose of Rule 41(a)(1)(B) would not be served by strictly applying Rule 41(a)(1)(B) to Redbrick's previous dismissals because they were made as the result of failure to attach property under Supplemental Rule B and therefore should not be treated as voluntary dismissals for the purposes of Rule 41(a)(1)(B). Redbrick did not dismiss the previous actions in the Western District of Pennsylvania and the Southern District of Alabama to avoid CAC's responsive pleading. Rather, Redbrick's voluntary dismissals were consequences of CAC's agent's and PNC Bank's assertions under oath that CAC was not subject to jurisdiction in those venues and the courts would be unable to attach property necessary for further proceedings. To

consider Redbrick's dismissals resulting from failed preliminary Supplemental Rule B attachments as strictly voluntary dismissals under Rule 41(a)(1) would do injustice to Redbrick and run contrary to the "basic purpose of the Federal Rules [] to administer justice through fair trials." *Poloron Products,* 534 F.2d at 1017. Therefore, the dismissals in the Western District of Pennsylvania and the Southern District of Alabama will not be given preclusive effect. The motion to dismiss will be denied.

### B. Countersecurity Supplemental Rule E(7)(a)

Redbrick argues that countersecurity is appropriate when a defendant whose property has been attached asserts counterclaims arising from the same transaction as the claims that required attachment. (D.I. 51 at 3). Redbrick states that because it has asserted valid counterclaims "for unpaid hire, voyage costs, and consumed bunkers as a result of the breach of the charter party agreement," this Court should require countersecurity from CAC to secure those claims. (*Id.* at 4). Redbrick argues further that countersecurity is especially necessary in this case because "CAC is a foreign corporation with no presence in the District and no known assets for satisfaction of an arbitration award." (*Id.*). Redbrick states that it has provided security for CAC's claims because it has bunkered the Vessel and provided provisions to the crew of the Vessel during the period it has been arrested under the direction of this Court. (D.I. 60 at 5–6).

CAC argues that Redbrick's request for countersecurity should be denied because Redbrick has not given security itself, as required by Supplemental Rule E(7). (D.I. 53 at 4). CAC states that the attached property does not count as security for the purposes of Supplemental Rule E(7). (*Id.* at 4–5). CAC argues further that Redbrick's counterclaims are excessive in the damages they seek and that requiring CAC to provide countersecurity for those

claims would create a financial burden for CAC that would deprive CAC of its right to proceed with this action. (*Id.* at 6).

Supplemental Rule E(7)(a) states:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given, unless the court directs otherwise.

The rule provides for security on a counterclaim only when that party "has given security for damages." *First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC,* 540 F.Supp.2d 483, 486 (S.D.N.Y. 2008). Redbrick has not provided security for the claims in the complaint. In fact, Redbrick is arguing for the reduction of security it is yet to post. Redbrick's expenses in maintaining the vessel are not security within the meaning of Supplemental Rule E(7). The security for the release of attached property is described in Supplemental Rule E(5) as a "special" or "general" bond. Redbrick has provided neither a special nor general bond required by Supplemental Rule E(7)(a). Maintenance costs are not a basis for Supplemental Rule E(7); they are covered by Supplemental Rule E(2)(b). Redbrick has not met the prerequisite for a grant of countersecurity pursuant to Supplemental Rule E(7). Therefore, the motion for countersecurity will be denied.

**C. Security for Costs Under Supplemental Rule E(2)(b)**

Redbrick asserts that it "has incurred daily operating costs of the Vessel of not less than USD 5,392.00 per day" since the Vessel was detained on February 12, 2021. (D.I. 51 at 5). Redbrick argues it is entitled to security for those costs pursuant to Supplemental Rule E(2)(b). (*Id.* at 6).

CAC argues that Redbrick is not entitled to the specific types of costs it seeks and the request for security should be denied. (D.I. 53 at 9–10). CAC states that the expenses Redbrick asserts are "'are not taxable as costs, [and therefore] [cannot support a requirement that CAC post security] under Rule E(2)(b).'" (D.I. 53 at 10 (quoting *Result Shipping,* 56 F.3d at 401–02)). But CAC's quotation from *Result Shipping* is referring to attorney's fees. The property seized in *Result Shipping* was residential property and did not involve any of the maintenance costs necessary to keep a ship in working condition. *Result Shipping,* 56 F.3d at 397. The citation to and quotation from *Result Shipping* are therefore irrelevant.

Redbrick's request for security covers costs that Redbrick may be entitled to from CAC and therefore Redbrick can ask for security from CAC to cover those potential costs. *See* 28 U.S.C. § 1921(e). Redbrick's operational costs related to the maintenance of the Vessel are the exact type of costs for which Supplemental Rule E(2)(b) is intended to provide security.

CAC is a foreign entity "whose only presence in this district is as plaintiff in this action; accordingly, posting security is the only way to ensure that [Redbrick] will receive its expenses if it is ultimately so entitled." *A. Coker & Co. v. Nat'l Shipping Agency Corp.,* 1999 WL 350035, at *3 (E.D. La. May 27, 1999). To protect Redbrick from the potential consequences of the seizure of the Vessel, I will order CAC to provide security for the costs that have accrued from Redbrick's maintenance of the Vessel since February 12, 2021. Redbrick's maintenance costs are $5,392.00 per day, and it has been 158 days since the ship was seized. This amounts to $851,936.00 in costs since seizure. Therefore, after adding an additional 50% for interest and expenses after this date, the total security for costs amounts to approximately $1,277,904.00.

CAC provided an affidavit by Alberto Roquebert, Managing Director of CAC, that claims that CAC only has about $10,000.00 in total assets. (D.I. 53, Ex. 1 at 2). Because there is

9

an issue whether CAC can post security for costs, CAC will provide this Court with evidence

and documentation of its financial situation by Friday, July 30, 2021. This Court will then

address this motion for security for costs and decide whether to require security from CAC.

**D. Reduction of Security Pursuant To Supplemental Admiralty Rule E(5)(a) And Rule E(6)**

Redbrick argues that CAC, in its amended complaint, did not "fairly state[]" its claim for

damages and "inflated the claimed damages by almost double without any change in

circumstances and without any legitimate citation to a basis for the claimed quantum." (D.I. 50 at

7). Redbrick argues that because this Court has discretionary authority to alter the security

amount sought, this Court should "set a bond amount consistent with alleged damages which are

non-frivolous and are fairly stated." (*Id.*).

CAC does not argue against Redbrick's objection to CAC's amended complaint and

offers no response to Redbrick's motion.

Although CAC has not challenged Redbrick's motion, Redbrick is still required by

Supplemental Rule E(6) to show "good cause" for the reduction of the bond amount. Even

though CAC added new cancelled voyages to the amended complaint, CAC's claims are fairly

stated. At this stage of proceedings, taking CAC's allegations as true, the claims for damages are

not frivolous. They are alleged to arise from voyages that were planned but could not be

completed because of the breach of charter. Redbrick has not offered any other arguments

relating to why good cause exists to reduce the current bond amount. Therefore, the bond amount

shall be $1,697,816.25, 150% of the current damages claim.

**E. Motion for Interlocutory Sale of the Vessel Pursuant to Rule E(9)(b)**

CAC argues that this Court should order the interlocutory sale of the Vessel because the

Vessel can sink and is therefore perishable, the expense of keeping the Vessel is "excessive and

disproportionate" in relation to the sale price of the Vessel, and there has been an unreasonable delay by Redbrick in securing the release of the Vessel. (D.I. 62 at 2–3).

Redbrick argues that CAC fails to provide any evidence that the Vessel's ability to sink thereby enables this Court to deem the Vessel perishable and subject to interlocutory sale. (D.I. 66 at 3–4). Redbrick states further that CAC has failed to provide evidence that expenses of the continued maintenance of the Vessel are excessive or disproportionate based on previous determinations in similar cases. (*Id.* at 4–6).

There are three independent circumstances that can constitute valid grounds for the order of an interlocutory sale of a vessel pursuant to Supplemental Rule E(9)(b): "(A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing the release of the property." *Park Cities Bank v. M/V Holo-Kai,* 2007 WL 9701883, at *1 (S.D. Fla. Dec. 18, 2007). CAC has not shown that the Vessel's capacity to sink makes it perishable or liable to deterioration. *See AmericanWest Bank v. P/V INDIAN,* 2013 WL 784756, at *2 (S.D. Cal. March 1, 2013). Redbrick's delay is not unreasonable. Redbrick has argued that the "general rule" is that "defendants are given at least four months to bond a vessel absent some other considerations" before an interlocutory sale should be granted. (D.I. 66 at 5 (citing *John W. Stone Oil Distrib., L.L.C. v. M/V LUCY,* 2009 WL 4166605, at *1 (E.D. La. Nov. 20, 2009)). Even though delays as short as three months have been deemed unreasonable and more than four months have passed, the delay in this action is partially the result of this Court's delay in responding to Redbrick's request for a reduced bond amount for security. *See Pee Dee State Bank v. F/V WILD TURKEY,*

1991 WL 355221, at *5 (D.S.C. Oct. 9, 1991). Redbrick's motion to set bond amount was filed less than two months after the Vessel was seized. (D.I. 50 at 2).

However, based on the calculations regarding the costs of maintaining the Vessel and the sale price previously ordered by the Court in the original motion for interlocutory sale, the expense of keeping the Vessel is excessive. (D.I. 17 at 1). Even considering the most generous estimate of the sale price for the Vessel so far presented in this case, $1,697,816.25, the expenses for maintaining the Vessel have amounted to around half that amount in the five and a half months since the Vessel was seized. *See Park Cities Bank*, 2007 WL 9701883, at *1 (finding that daily maintenance costs of $1,052.50 that had exceeded $220,000 during of the seizure of the vessel were excessive in relation to the $3,000,000.00 and $6,000,000.00 sale price of the vessel). Redbrick argues that CAC is not incurring any costs for the continued attachment of the Vessel and therefore this Court should not proceed with the sale. (D.I. 66 at 8). However, Redbrick is asking for security for the Costs of maintaining the Vessel and CAC could ultimately be responsible for paying at least some of the costs of attachment. *See* 28 U.S.C. § 1921(e).

Therefore, I order the interlocutory sale of the Vessel. CAC has not offered any compelling reasoning why this Court should change the minimum bid proposed in the original motion for interlocutory sale. (D.I. 16). The sale should "protect both the plaintiff and defendants' interest in having the [V]essel sold for a high enough price to cover all potential claims and expenses." *20th Century Fox Film Corp. v. M.V. Ship Agencies*, 992 F. Supp. 1434, 1438 (M.D. Fla. 1997). CAC only discusses one possibility for the sale of the Vessel—by sending it to India to be broken down for parts. (D.I. 62 at 2-3). CAC fails to state why breaking the Vessel down is now necessary despite not being so when the original motion for interlocutory sale was made. (D.I. 16). Therefore, "a minimum sale price of $1,697,816.25,

150% of the total claims asserted against the Vessel, which will provide for payment of interest, contractual attorneys' fees and any custodia legis expenses" is set, again.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's motion to dismiss (D.I. 54) is DENIED; Defendant's motion for an order for countersecurity (D.I. 50) is DENIED; Defendant's motion for an order to set bond amount (D.I. 50) is DENIED; and Plaintiff's renewed motion for interlocutory sale (D.I. 62) is GRANTED. An order comprising the details of the interlocutory sale will be filed in a separate order.

It is ORDERED that CAC Maritime shall provide the Court with evidence as to its financial ability to post security for costs. CAC Maritime should supply this information no later than Friday, July 30, 2021. The Court will take Redbrick's motion for security for costs (D.I. 50) under consideration then.

IT IS SO ORDERED.

Entered this _20_ day of July, 2021.

_____
United States District Judge

13