**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CAC MARITIME, LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-202-RGA |
| | ) | |
| REDBRICK VENTURES, LTD., et al., | ) | IN ADMIRALTY |
| | ) | |
| Defendant. | ) | |

**AGENT XS SASU'S OBJECTIONS TO THE INTERLOCUTORY SALE OF THE CARGO ONBOARD THE M/V OCEAN FORCE**

Dated: February 27, 2022

BAYARD, P.A.

Peter B. Ladig (#3513)
Ronald P. Golden III (#6254)
600 N. King St., Suite 400
Wilmington, Delaware 19801
(302) 655-5000
pladig@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Agent XS SASU*

Of Counsel:

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
Thomas H. Belknap, Jr.
(212) 885-5270
tbelknap@blankrome.com
(*pro hac vice* motion to be filed)

## TABLE OF CONTENTS

**Page**

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ..........2

SUMMARY OF ARGUMENT ..........3

STATEMENT OF FACTS ..........4

ARGUMENT ..........6

I. The Court Lacks In Rem Jurisdiction Over The Cargo Because It Was Never Arrested And No Maritime Lien Claim Lies Against It. ..........6

II. Alternatively, If The Court Is Inclined To Allow The Sale To Proceed, Then Agent XS Should Have First Priority Over The Sale Proceeds. ..........8

CONCLUSION ..........10

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*American Bank of Wage Claims v. Registry of the District Court of Guam*,
431 F.2d 1215 (9th Cir. 1970) ....................................................................................4

*Associated Metals and Minerals Corp. v. ALEXANDER'S UNITY MV*,
41 F.3d 1007 (5th Cir. 1995) ....................................................................................6, 7, 8

*General Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration*,
668 F.2d 811 (5th Cir.1982) ....................................................................................6

*Morgan Guar. Trust v. Hellenic Lines Ltd.*,
593 F. Supp. 1004 (S.D.N.Y. 1984)....................................................................................6, 7

*New York Dock Co. v. The Poznan*,
274 U.S. 117, 47 S. Ct. 482 (1927)....................................................................................6

*Rolls Royce Industrial Power (India) v. M.V. FRATZIS M.*,
905 F. Supp. 106 (S.D.N.Y. 1995) ....................................................................................5

*Turner & Blanchard, Inc. v. The S.S. Emilia*,
322 F.2d 249 (2d Cir. 1963)....................................................................................6

*U.S. v. James Daniel Good Real Property*,
510 U.S. 43 (1993)....................................................................................7

### Other Authorities

2 *Benedict on Admiralty* § 22 (7th ed. rev. 2000)....................................................................................4

**INTRODUCTION**

Agent XS SASU ("Agent XS"), by and through its undersigned counsel, and pursuant to (D.I. 102), respectfully submits this statement of position and supporting authorities in support of its objection to this Court's Order dated February 10, 2022 (the "Sale Order") to the extent it pertains to the sale of its cargo onboard the M/V OCEAN FORCE (the "Vessel"). For the sake of clarity, Agent XS does not object to the sale of the Vessel and is not asking the Court to detain the vessel any longer. However, certain cargo[1] onboard the Vessel is the property of Agent XS and, thus, the Court should modify the Sale Order to reflect that Agent XS's Cargo onboard the Vessel remains in Agent XS's ownership. No party to this action has asserted any claim *in personam* against Agent XS nor *in rem* against its Cargo. This Court has never been asked by any party to attach the Cargo pursuant to Rule B of the Supplemental Admiralty Rules nor to arrest the Cargo pursuant to Rule C, and no order of attachment or arrest has ever been issued, much less served on the Cargo by the U.S. Marshal. Additionally, no process of any kind has ever been served on Agent XS. For all of these reasons, this Court lacked jurisdiction to sell Agent XS's Cargo by judicial sale, and the sale should be vacated to the extent it purported to sell Agent XS's property.

In the alternative, in the event the Court concludes it did not lack jurisdiction to sell Agent XS's Cargo along with the Vessel, Agent XS respectfully submits that it should be entitled to first priority over the sale proceeds for the full value of the Cargo sold because: (1) sale of the Cargo along with the vessel should be considered a *custodia legis* expense necessarily incurred for the benefit of creditors to effectuate the sale of the Vessel; (2) Agent XS is an innocent party, whose property has been taken and sold without notice and a fair opportunity to object; (3) plaintiff CAC Maritime Ltd. ("CAC Maritime"), the Vessel and its owner Redbrick Ventures, Ltd. ("Redbrick")

---

[1] Specifically, we are referring to the cargo listed in Exhibit A at Docket 99-1 hereinafter referred to as the "Cargo".

breached the contract of carriage (*i.e.* the bills of lading found at D.I. 99-1) by failing to deliver the Cargo to the discharge port, *i.e.*, Haiti; and (4) Redbrick could have avoided nearly all of its claimed *custodia legis* costs by either posting security, paying the claim, or seeking an interlocutory sale of the vessel immediately upon concluding it was not in a position to do either of these things. At a minimum, the Court should schedule a hearing to allow the parties the opportunity to submit evidence regarding the *custodia legis* costs and to brief the priority issue.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff CAC Maritime filed a complaint against the Vessel (D.I. 1) asserting a breach of contract claim and maritime lien *in rem* against the Vessel and "her engines, tackle and apparel." On the basis of CAC Maritime's complaint, a warrant for the Vessel's arrest was issued on February 12, 2021. (D.I. 10.)

On February 24, 2021 (D.I. 13) and March 12, 2021 (D.I. 31), CAC Maritime amended its complaint to include *quasi in rem* claims against Redbrick and seeking Rule B attachment of Redbrick's property. As a result, on March 12, 2021, this Court issued writs of maritime attachment and garnishment to be served upon the Master of the M/V OCEAN FORCE (D.I. 32) and to Inchcape Shipping Services, Inc. (D.I. 33).

Neither the complaint nor the amended complaint asserted claims *in personam* against Agenx XS nor *in rem* against the Cargo, and no order of arrest or attachment was issued at any time in this matter authorizing the arrest or attachment of the Cargo.

On July 20, 2021, the Court entered an order scheduling the sale of the Vessel "for a minimum bid of not less than $1,697,816.25." (D.I. 71.)

On October 21, 2021, the parties filed a joint status report stating that "The Parties complied with the Court's order to arrange a judicial sale, but there were no qualified bidders and the auction which had been set was cancelled." (D.I. 74.)

On December 14, 2021, the Court entered an order granting Redbrick's motion for the interlocutory private sale of the Vessel to PT Condro Pranoto Bersaudara of Jakarta, Indonesia in the amount of $1,300,000.00. (D.I. 83.) However, it appears the sale fell through and the Vessel remained in the Court's custody.

On February 10, 2022, the Court entered an order scheduling the sale of the Vessel and all of its cargo, including the Cargo owned by Agent XS, notwithstanding that the Cargo was never claimed against nor arrested or attached in this matter.

On February 18, 2022, upon learning for the first time of the impending judicial sale of its Cargo, Agent XS filed an objection to the sale of the Vessel and cargo. (D.I. 99.)

Pursuant to the Sale Order, on February 18, 2022, the Vessel and cargo was sold to Alexander Navigation Inc. on a judicial sale for $500,000. (D.I. 100.)

This Court set a hearing for March 1, 2022 to hear any objections to confirmation of the judicial sale.

**SUMMARY OF ARGUMENT**

1. The Court should modify the Sale Order to reflect that the Cargo onboard the Vessel remains in Agent XS's ownership because no party has asserted a claim against the Cargo or against Agent XS and because the Court has never attached or arrested the Cargo and therefore lacks jurisdiction over it to order its sale.

2. Alternatively, the sale of the Cargo onboard the vessel should be considered a first priority *custodia legis* expense because (1) the inclusion of the Cargo as part of the Vessel sale was done solely for the benefit all creditors to facilitate the sale of the Vessel, (2) the alternative cost of discharging the Cargo would be categorized as *custodia legis* expenses, and (3)

equity and good conscience require the finding that the Cargo value should be treated as a top priority *custodia legis* expense.

## STATEMENT OF FACTS

On December 23, 2020, Agent XS entered into a contract with Plaintiff CAC Maritime Ltd. for the shipment of used cars, trucks, and containers by the M/V Ocean Force to Haiti (the "Charter"). The shipment was valued at approximately **$680,000**. The shipment was due to be loaded in Guadeloupe and St. Martin.

Pursuant to the Charter, Agent XS was to pay the freight to CAC Maritime in two installments: $65,000 on signing and $65,000 prior to the arrival at the port of loading.

On December 29, 2020, CAC Maritime issued an invoice to Agent XS for $65,000 to be paid to Steigler Shipping, the shipbroker for the Charter. Agent XS paid $64,315.39 on January 6, 2021. On January 15, 2021, Agent XS paid the captain of the Vessel $2,900 and €2,480 in cash.

After loading in Guadeloupe and St. Martin, the Vessel left on January 20, 2021, and was expected to arrive in Haiti on or about January 25, 2021. On January 21, 2021, Agent XS paid another $59,757 to Steigler Shipping.

While the Vessel was en route to Haiti, CAC Maritime sent a letter to Agent XS demanding payment of $59,757 plus an additional $51,281.25 for demurrage.

On February 11, 2021, Steigler Shipping sent another invoice to Agent XS for $70,000. Agent XS paid this invoice on or about February 12, 2021. On February 12, 2021, CAC Maritime issued Agent XS an invoice for $70,000 as "demurrage settlement." Agent XS has disputed this invoice. In total, Agent XS has paid a total of $199,862.39 ($130,000 of freight and $69,862.39 of demurrage).

According to CAC Maritime, upon loading Agent XS's Cargo in Guadeloupe and St. Martin, the Vessel proceeded to Jacumel, Haiti, but it could not unload the Cargo due to alleged

problems with the port there.[2] (D.I. 31 ¶ 7.) The Vessel then proceeded to Wilmington to take on additional cargo. (*Id.*) However, the Vessel could not take on cargo at Wilmington because it had been unable to unload Agent XS's Cargo in Haiti, and the owner had failed to remove all of its property from the Vessel. (*Id.* ¶ 8.)

On February 12, 2021, CAC Maritime filed this action and arrested the Vessel pursuant to Rule C of the Supplemental Admiralty Rules. CAC Maritime's complaint did not assert a claim against Agent XS nor a claim in rem against its Cargo, and it did not seek arrest or attachment of the Cargo pursuant to either Rule B or Rule C of the Supplemental Admiralty rules. On February 24, 2021 (D.I. 13) and March 12, 2021 (D.I. 31), CAC Maritime amended its complaint to include *quasi in rem* claims against Redbrick and seeking Rule B attachment of Redbrick's property. As a result, on March 12, 2021, this Court issued writs of maritime attachment and garnishment to be served upon the Master of the M/V OCEAN FORCE (D.I. 32) and to Inchcape Shipping Services, Inc. (D.I. 33).

At no time did CAC Maritime serve a copy of the complaint or amended complaints on Agent XS nor notify it that the Vessel had been arrested. At no time has this Court issued an order authorizing the arrest or attachment of the cargo, and the cargo has never been seized or detained by the U.S. Marshal.

On February 10, 2022, almost a year after the Vessel was arrested, the Court entered an order providing for the sale of the Vessel and all of its cargo, including the Cargo owned by Agent XS. At no time did CAC Maritime provide Agent XS with notice of the intended sale of its Cargo. Agent XS only became aware of this action through one of its principal's contacts in the United

[2] Agent XS disputes whether the Vessel actually went to Jacumel, Haiti and attempted to unload the cargo. According to Agent XS's own investigation and the port log, there is no record of the Vessel entering Jacumel, Haiti.

States, upon which it promptly filed an objection to the sale on February 18, 2022. (See D.I. 99.) Pursuant to the Sale Order, on February 18, 2022, the Vessel and cargo was sold to Alexander Navigation Inc. on a judicial sale for $500,000. (D.I. 100.)

This Court has not yet confirmed the sale and has scheduled a hearing for March 1, 2022 to hear any objections to the sale.

## ARGUMENT

### I. THE COURT LACKS *IN REM* JURISDICTION OVER THE CARGO BECAUSE IT WAS NEVER ARRESTED AND NO MARITIME LIEN CLAIM LIES AGAINST IT.

As a preliminary matter and as mentioned above, Agent XS does not object to the sale of the Vessel and is not asking the Court to detain the vessel any longer. However, Agent XS does object to the sale of its Cargo on the basis that the Court lacked *in rem* jurisdiction over it because the cargo was never arrested and no maritime lien claim lies against it.

It is well settled that a district court's admiralty *in rem* jurisdiction depends upon the arrest of the *res* under court process. "The foundation for the effective exercise of jurisdiction *in rem* is the taking of the vessel or other property that is the subject of the action into the custody of the court." 2 *Benedict on Admiralty* § 22 at 2–6 (7th ed. rev. 2000). "Jurisdiction is the power to adjudicate a case upon the merits and dispose of it as justice may require. As applied to a suit *in rem* for the breach of a maritime contract, it presupposes, first, that the contract sued upon is a maritime contract; and second, that the property proceeded against is within the lawful custody of the court." *The Resolute*, 168 U.S. 437, 439 (1897). "It is axiomatic that *in rem* jurisdiction exists in an action only where the subject matter of the action, or an appropriate substitute thereof, is within the jurisdiction of the court in which the action lies. Thus, where a vessel is the target of an *in rem* action in admiralty, it must be both within the territorial jurisdiction of the court hearing the cause and subject to the order of the court through process of arrest." *American Bank of Wage*

*Claims v. Registry of the District Court of Guam,* 431 F.2d 1215, 1218 (9th Cir. 1970). "As a general matter, a court cannot make orders relating to or in aid of an *in rem* claim unless the *res* is within the court's jurisdiction." *Rolls Royce Industrial Power (India) v. M.V. FRATZIS M.*, 905 F. Supp. 106, 107 (S.D.N.Y. 1995) (in admiralty action *in personam,* district court lacked jurisdiction to direct defendant shipowner to submit to expedited discovery for the sole purpose of ascertaining the whereabouts of the vessel so that *in rem* jurisdiction could be obtained by arresting her).

Here, plaintiff CAC Maritime filed a complaint against the Vessel (D.I. 1) asserting a breach of contract claim and maritime lien *in rem* against the Vessel.[3] As a result of CAC Maritime's complaint, a warrant for the Vessel's arrest was issued on February 12, 2021. (D.I. 10.)

On February 24, 2021 (D.I. 13) and March 12, 2021 (D.I. 31), CAC Maritime amended its complaint as to include *quasi in rem* claims against Redbrick and seeking Rule B attachment of Redbrick's property. As a result, on March 12, 2021, this Court issued writs of maritime attachment and garnishment to the Master of the M/V OCEAN FORCE (D.I. 32) and to Inchcape Shipping Services, Inc. (D.I. 33).

Notwithstanding the above, the parties to this litigation never asserted claims against the cargo onboard the Vessel and the Court never arrested the cargo. In fact, CAC Maritime's own filings at docket acknowledge that third-parties, like Agent XS, had interests in the cargo separate and apart from the dispute between Redbrick and CAC Maritime. (See D.I. 93 at p. 2.)[4]

---

[3] CAC Maritime amended its complaint on February 24, 2021 (D.I. 13) and March 12, 2021 (D.I. 31) to include quasi in rem claims against Redbrick and seeking Rule B attachment of Redbrick's property.

[4] CAC Maritime also stated, "There cannot simply be a sale of that cargo, to apply (as sale of the Vessel would) toward the amounts claimed against Redbrick *quasi in rem* and the Vessel *in rem*." Instead of proposing that the cargo be excluded from the sale, CAC Maritime proposed that only 10% of the purchase price of the Vessel be allocated to compensate the third-parties who owned the cargo. CAC Maritime provided no justification for this allocation, nor did it proffer any evidence that the third parties agreed with this allocation or were even aware of this proceeding.

Therefore, Agent XS respectfully requests that the Court modify the Sale Order to reflect that the Cargo remains in its ownership. The Court should leave it to Agent XS and the Vessel's new owner to attempt to reach an agreement on what to do with the Cargo, subject to the parties' respective right to seek further relief from the Court as necessary if an agreement cannot be reached.

## II. ALTERNATIVELY, IF THE COURT IS INCLINED TO ALLOW THE SALE TO PROCEED, THEN AGENT XS SHOULD HAVE FIRST PRIORITY OVER THE SALE PROCEEDS.

Generally, "services or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court or of an officer of the court ... should be allowed as *custodia legis* expenses." *General Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811, 816 (5th Cir.1982) (citing *New York Dock Co. v. The Poznan*, 274 U.S. 117, 121, 47 S. Ct. 482, 484 (1927)). *See also Associated Metals and Minerals Corp. v. ALEXANDER'S UNITY MV*, 41 F.3d 1007 (5th Cir. 1995). Even if such expenditures are made absent a court order, "'*custodia legis*' expenses may be ordered by the court ... if equity and good conscience so require." *Associated Metals*, 41 F.3d at 1018 citing *General Elec.*, 668 F.2d at 815; accord *Morgan Guar. Trust v. Hellenic Lines Ltd.*, 593 F. Supp. 1004, 1010 (S.D.N.Y. 1984) (emphasis added).

For example, in *Associated Metals*, the Fifth Circuit affirmed the district court's finding that the expenses incurred by Associated Metals in discharging their cargo from the vessel were *custodia legis* costs. Specifically, the district court found, "Associated's discharge of its cargo was beneficial to all creditors and it was directly related to the substantial sale price of the vessel." *Associated Metals*, 41 F.3d at 1018. The Fifth Circuit reasoned that the vessel "contained several thousand pieces of steel, several hundreds of miles away from their destination; it seems more than

---

In fact, CAC Maritime provided no evidence supporting its unfounded claim that it possessed a lien against the cargo.

reasonable that the removal of the steel was necessary to maintain the value of the vessel." *Id.*; *see also Turner & Blanchard, Inc. v. The S.S. Emilia*, 322 F.2d 249, 250 (2d Cir. 1963) (holding that "'service rendered to the ship, in the aid of cargo, necessarily inured to their [lienors] benefit'" and were properly considered *custodia legis* expenses); *Morgan Guar. Trust*, 593 F. Supp. 1004, 1010 (S.D.N.Y. 1984) (finding that cargo discharge costs necessary to minimize the possibility of additional claims against the vessel and to maximize the sales price of the vessel were *custodia legis* expenses).

Here, Agent XS is an innocent party whose Cargo has been sold without notice and fair opportunity to be heard. It is well-settled that "individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993). Agent XS received no notice nor an opportunity to be heard before its property was sold pursuant to the Sale Order. Due process requires that Agent XS be fairly compensated for its forced contribution to the resolution of this matter.

Most importantly, Redbrick could have avoided most of the *custodia legis* costs by either posting security, paying the claim, or seeking an interlocutory sale of the vessel at the outset of this matter once it determined it was not in a position to do either of these things. Therefore, Redbrick should not be rewarded with first priority over the proceeds of the Vessel and cargo when it had the power and duty to minimize the cost of maintaining the ship during its arrest. Indeed, it should be noted that the vessel and its owner Redbrick have unclean hands given that they breached the contract of carriage with Agent XS when they failed to deliver the Cargo to the contracted discharge port, *i.e.*, Haiti.

Just like in *Associated Metals* and *Morgan Guar.* (see supra), the Court should consider the value of Agent XS's Cargo a *custodia legis* expense for which Agent XS has first priority over

the proceeds of the sale. First, there can be no question that the inclusion of the cargo as part of the Vessel sale benefitted all creditors because it facilitated the sale of the Vessel. Additionally, the Cargo brought a higher price for the Vessel. Indeed, Agent XS respectfully submits that the value of the Cargo appears to have been higher than the value of the Vessel itself.

Second, the court could have directed the Cargo to be discharged and considered the cost for doing so as a *custodia legis* expense. This way, Agent XS could have retained ownership of its Cargo and the new owners would have obtained ownership of the actual subject of this litigation – *i.e.*, the Vessel. For the same reason, the value of the Cargo as sold should be treated as a *custodia legis* expense.

In any event, "'*custodia legis*' expenses may be ordered by the court ... if equity and good conscience so require." *Associated Metals*, 41 F.3d at 1018. Here, it would be equitable and just to reimburse Agent XS for its lost property out of the sale proceeds given that they are innocent bystanders (and, indeed, innocent victims) in this matter.

## **CONCLUSION**

Agent XS respectfully requests that the Court modify the Sale Order to reflect that the Cargo remains in Agent XS's ownership.

In the alternative, the Court should order that Agent XS has first priority over the sale proceeds. At a minimum, the Court should schedule a hearing to allow the parties to submit evidence regarding the *custodia legis* costs and to brief the priority issue.

Agent XS respectfully request that this Court grant such other and further relief as it deems appropriate.

Dated: February 27, 2022

BAYARD, P.A.

/s/ *Peter B. Ladig*
Peter B. Ladig (#3513)
Ronald P. Golden III (#6254)
600 N. King St., Suite 400
Wilmington, Delaware 19801
(302) 655-5000
pladig@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Agent XS SASU*

Of Counsel:

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
Thomas H. Belknap, Jr.
(212) 885-5270
tbelknap@blankrome.com
(p*ro hac vice* motion to be filed)